UNTIED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

ALVA SANSOM,

    Plaintiff,

v.                                                     Civil Action No. 2:17-cv-04444
                                                    Judge _____

TSI Corp. a/k/a TSICorp,

    Defendant.

## COMPLAINT

1.    Plaintiff, Alva Sansom ("Sansom"), brings this action against TSI Corp. a/k/a TSICorp ("TSI") for the wrongful termination of his employment and for the failure to rehire him in violation of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 *et seq.*, and of the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §§ 1132, 1140, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

## JURISDICTION

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (3), and (4), 28 U.S.C. § 1367, 29 U.S.C. § 626, 42 U.S.C. § 12117 and/or 29 U.S.C. §§ 1132, 1140.

3.    Sansom filed a timely charge of discrimination before the Equal Employment Opportunity Commission ("EEOC") for his wrongful discharge and failure to rehire claims pursuant to 29 U.S.C. § 621 *et seq.* and 42 U.S.C. §12101 *et seq.*

4.    The EEOC issued a Notice of Right to Sue on September 11, 2017.  This civil action under the ADEA and the ADA is timely filed within ninety (90) days of the receipt of the Notice

of Right to Sue from the EEOC. The Notice of Right to Sue was issued at the request of Sansom as more than 180 days had passed and no final action had been taken by the EEOC. On information and belief, the EEOC had not begun investigating or significantly investigating the claims when the EEOC Notice of Right to Sue was issued.

## VENUE

5.     Venue lies in the Southern District of West Virginia because TSI unlawfully terminated Sansom's employment in the Southern District, because it is the judicial district in which Sansom would have worked but for the unlawful termination of his employment, and/or because it is the judicial district in which a substantial part of the events giving rise to the claims occurred. 28 U.S.C. § 1391(b); 42 U.S.C. § 2002e-5(f)(3) and 42 U.S.C. § 12117.

## PARTIES

6.     Sansom, who was at all times relevant herein over the age of 40, was employed by TSI as an employee within the meaning of the WVHRA, the ADA, the ADEA and the FMLA.

7.     TSI is a foreign corporation doing business in Kanawha County, West Virginia, and is an employer within the meaning of the WVHRA, the ADA, the ADEA and the FMLA, although the website of the West Virginia Secretary of State indicates that its corporate status in West Virginia has been revoked.

## FACTS

8.     Sansom was hired to work in maintenance by TSI on or about October 2012 to work at the West Virginia National Guard Training Center at the Memorial Tunnel ("Training Center") in Standard, West Virginia.

9. At all times relevant herein, Sansom performed his work for TSI in a satisfactory manner.

10. In March 2014, Sansom was diagnosed with and treated for throat cancer, including radiation and chemotherapy, requiring him to be off from work for approximately three (3) months.

11. The Director of the Training Center ("Director") as well as other management employees at the Training Center were advised of and fully aware of Sansom's cancer diagnosis.

12. The cancer treatments were successful, but the radiation treatments caused serious radiations burns that paralyzed one side of his vocal cords causing him continuing problems including, but not limited to, difficulty swallowing, choking and difficulty speaking. At times, he must communicate in writing because of the paralysis of part of his vocal cords. The treatments also caused swelling and destroyed his thyroid. However, none of these problems prevent him from continuing to fully perform the essential functions of his job.

13. The foregoing injuries to Sansom's vocal cords, impaired his ability to speak and swallow, resulted in chronic edema and destroyed his thyroid. These injuries are permanent and are physical impairments that substantially limit one or more major life activities including, but not limited to, speaking and swallowing.

14. Sansom's history of cancer and his impairments also constitute a record of disability and/or led TSI to regard him as disabled within the meaning of the WVHRA and the ADA.

15. In July 2014, Sansom returned to work at the Training Center for one month of light duty and then resumed his normal full time job completing his work in a wholly satisfactory manner consistent with the expectations of TSI.

16. When Sansom returned to work, the Director and other management employees were

aware of his history of cancer, of his impairments and of the way in which those impairments substantially limited one or more major life activities.

17.     In early 2016, a pet scan for follow-up of his cancer identified a spot on Sansom's left lung which required diagnostic exploratory surgery.

18.     In early 2016, after learning that Sansom would be off from work for his surgery, TSI hired two new employees to do work that was the same as or similar to the work that Sansom had been doing. On information and belief, these individuals were under the age of forty and, therefore, substantially younger than Sansom. Also, unlike Sansom, these individuals did not have and were not regarded by TSI as having a disability or a record of a disability.

19.     After the substantially younger persons were hired by TSI, Sansom was assigned to work with one of them to familiarize the new employee with the job. Sansom was told that the new employee was going to do "extra work" that needed to be done.

20.     Sansom began his medical leave in March 2016 for diagnostic exploratory surgery and a biopsy.

21.     The surgery and biopsy failed to find any lesion. However, Sansom was hospitalized as a result of the surgery and of complications from the surgery until on or about March 31, 2016.

22.     While Sansom was still in the hospital, the Maintenance Manager ("Manager") at the Training Center, Sansom's immediate supervisor, called and left a message for Sansom who, at the time, was in the intensive care unit. Sansom's wife, Martha Sansom returned the Manager's call.

23.     During the call, Mrs. Sansom told the Manager that Samson was in the intensive care unit.

24. After learning that Sansom was in the intensive care unit, the Manager told Mrs. Sansom that TSI was terminating the employment of Sansom and another employee.

25. At the time of his layoff, Sansom, at age 63, was the oldest employee in the Training Center.

26. At the time of his layoff, Sansom was an individual with a disability as that term is defined under the WVHRA and the ADA.

27. At the time of his layoff, Sansom was off from work for a serious medical condition that qualified him for FMLA leave.

28. On information and belief, the other person who was discharged by TSI along with Sansom was also over the age of 40 and, on information and belief, was not a person with a disability within the meaning of the ADA and the WVHRA in that he did not have a record of a disability and was not regarded as a person with a disability.

29. When Sansom was let go, the substantially younger person who had been hired in early 2016, who did not have Sansom's medical history nor his impairments and who was trained by Samson, was one of the employees retained by TSI.

30. On information and belief, TSI retained at least one other employee who was substantially younger than Sansom.

31. Further, on information and belief, these younger employees were at least twenty (20) years younger than Sansom.

32. On or about March 26 or 27, 2016, after the Manager told Mrs. Sansom that Sansom

was laid off, Mrs. Sansom phoned the Director to find out more about Sansom's termination. The Director told her that he loved Sansom, that he was a really good employee and the he was going to bring him back if he got some more funding.

33. Several weeks after TSI terminated his employment, Sansom also called the Director and told him that he was ready to return to work. The Director said he would bring Sansom back, but he never did.

34. Notwithstanding the Director's statements to the Sansoms, the Director did not recall Sansom, but - later in the year – did recall one or more employees who were substantially younger than Sansom and who, on information and belief, were not individuals with a disability as defined in the ADA and the WVHRA.

35. On information and belief, these employees were recalled to perform work that Sansom could perform.

36. At the time of and following his employment termination, Sansom was able to perform the essential functions of his job with his medical leave and some minor accommodations.

37. Both of the substantially younger employees who were retained when Sansom was terminated from employment had less experience working for TSI than Sansom.

38. The reasons given by TSI for laying off Sansom were pretextual.

39. In fact, TSI has no credible explanation as to why it chose to terminate Sansom's employment while retaining substantially younger employees who, on information and belief, were not individuals with a disability. Nor has it offered any credible explanation as to why, after promising him a job if funding was available, it later recalled younger and healthier employees, but not Sansom.

40. Prior to Sansom's employment termination, the personnel director told Sansom's wife that Sansom's health insurance cost was "killing" TSI.

41. By filing with the EEOC, the case was cross-filed with the West Virginia Human Rights Commission ("WVHRC").

42. On November 9, 2017, the WVHRC issued a Notice of Right to Sue at the request of Sansom pursuant to W. Va. Code § 5-11-13(b). At that time, on information and belief, the WVHRC had not conducted an investigation of Sansom's case.

## FIRST CAUSE OF ACTION
### (WVHRA - Age and Disability)

43. When TSI laid off Sansom, it violated W. Va. Code § 5-11-9(1) by discriminating against him because its decision to lay him off was motivated, in whole or in part, by his age and/or his status as an individual with a disability as defined in W. Va. Code § 5-11-3(k) and 5-11-3(m).

44. TSI also violated W. Va. Code § 5-11-9(1) because it's decision not to recall Sansom to work and, instead, to recall workers who were substantially younger and/or who were not individuals with a disability was motivated, in whole or in part, by Sansom's age and/or his status as an individual with a disability as defined in W. Va. Code § 5-11-3(k) and 5-11-3(m).

45. As a direct and proximate result of the TSI's unlawful decisions to terminate Sansom's employment and not to recall him, Sansom has lost and will continue to lose wages and benefits in an amount to be determined by the jury at trial.

46. As a direct and proximate result of TSI's unlawful decisions to terminate Sansom's employment and not to recall him, Sansom is also entitled to reinstatement and/or front pay and benefits as determined by the Court.

47.     As a direct and proximate result of TSI's unlawful decisions to terminate Sansom's employment and not to recall him, Sansom has suffered humiliation, indignity, embarrassment and emotional distress entitling him to damages in an amount to be determined by the jury.

48.     The acts of TSI in terminating the employment of Sansom and in failing to recall him to work were willful, wanton, and/or undertaken with reckless indifference to the rights of the plaintiff, including the decision to lay him off while he was in the hospital recovering from surgery and the consequences of that surgery, entitling Sansom to punitive damages in an amount to be determined by the jury.

49.     Sansom is further entitled to his costs and reasonable attorney fees pursuant to W. Va. Code§ 5-11-13 of the West Virginia Human Rights Act and the decisions of the West Virginia Supreme Court of Appeals.

## SECOND CAUSE OF ACTION
## (ADA)

50.     When TSI laid off Sansom, it violated the ADA by discriminating against him because its decision to lay him off was motivated, in whole or in part, by his status as an individual with a disability as defined in the ADA and the cases decided in the federal courts.

51.     When TSI failed to recall Sansom, it violated the ADA by discriminating against him because its decision not to recall him to work was motivated, in whole or in substantial part, by his status as an individual with a disability as defined in the ADA and the cases decided in the federal courts.

52. As a direct and proximate result of the TSI's unlawful decisions to terminate Sansom's employment and not to recall him, Sansom has lost and will continue to lose wages and benefits in an amount to be determined by the jury.

53. As a direct and proximate result of TSI's unlawful decisions to terminate Sansom's employment and not to recall him, Sansom is also entitled to reinstatement and/or front pay and benefits as determined by the Court.

54. As a direct and proximate result of TSI's unlawful decision to terminate Sansom's employment and not to recall him, Sansom has suffered humiliation, indignity, embarrassment and emotional distress entitling him to damages in an amount to be determined by the jury.

55. The acts of TSI in terminating the employment of Sansom and in failing to recall him to work were willful, wanton, and/or undertaken with reckless indifference to the rights of the plaintiff, including the decision to lay him off while he was in the hospital recovering from surgery and the consequences of that surgery, entitling Sansom to punitive damages in an amount to be determined by the jury.

56. Sansom is also entitled to his costs and reasonable attorney fees for pursuing this case pursuant to the ADA.

### THIRD CAUSE OF ACTION
### (ADEA)

57. The foregoing actions of TSI in terminating the employment of Sansom and failing to recall him for work discriminated against him based upon his age in violation of his rights under the ADEA and the cases decided in the Federal Courts.

58. As a direct and proximate result of TSI's unlawful, discriminatory termination of Sansom's employment and its failure to recall him, Sansom has lost and will continue to lose wages and/or benefits in an amount to be proven at trial.

59. As a direct and proximate result of TSI's unlawful decisions to terminate Sansom's employment and not to recall him, Sansom is also entitled to reinstatement and/or front pay and benefits as determined by the Court.

60. TSI's termination of Sansom's employment and the failure to recall him to work were willful, wanton and malicious, and/or undertaken in reckless disregard to Sansom's rights under the ADEA entitling Sansom to liquidated damages in an amount equal to his lost wages.

61. Sansom is entitled to his costs and reasonable attorney fees or pursuing this case pursuant to the ADA.

## FOURTH CAUSE OF ACTION
### (ERISA § 510)

62. TSI provided Sansom with health insurance pursuant to a benefit plan that was an employee benefit plan within the meaning of ERISA.

63. Sansom was, at all times relevant herein, a participant in or beneficiary of the plan within the meaning of ERISA.

64. Sansom was discharged from employment for exercising his right to health insurance under the provisions of an employee benefit plan and/or for the purpose of interfering with his right to health insurance benefits under the plan in violation of ERISA, 29 U.S.C. § 1140.

65. As a direct and proximate result of his discharge, Sansom is entitled to his lost past wages and benefits in an amount to be determined by the jury and/or the Court incident to reinstatement.

66. Sansom is also entitled to his costs and reasonable attorney fees for pursuing this case pursuant to ERISA.

## FIFTH CAUSE OF ACTION
### (Wrongful Termination under FMLA)

67. At all relevant times, TSI was an "employer" as defined in § 101(4)(A) of the FMLA, 29 U.S.C. § 2611(4)(A).

68. At all relevant times, Sansom was an "eligible employee" as defined in § 101(2) of the FMLA, 29 U.S.C. § 2611(2).

69. TSI was aware that Sansom's medical leave and hospitalization represented a serious medical condition which qualified Sansom for leave under the FMLA.

70. TSI, by laying off Sansom, knowingly interfered with Sansom's exercise of his rights under the FMLA in violation of the anti-interference provisions of § 105(a), 29 U.S.C. § 2615, and/or of the Department of Labor's anti-retaliation and anti-discrimination regulation. 29 C.F.R. § 825.220.

71. As a direct and proximate result of TSI's termination of Sansom's employment, he has lost wages, lost other compensation, lost benefits, and lost his job. Sansom is therefore entitled to damages for lost wages and benefits, liquidated damages in the amount of double the award of wages, employment benefits, and other compensation awarded plus interest, and reinstatement to his job with no loss of seniority or status or, alternatively, future lost wages and benefits.

72. TSI's actions in violation of the FMLA also entitle Sansom to his reasonable attorney fees and other costs and expenses of this action pursuant to 29 C.F.R. § 825.400(c).

### SIXTH CAUSE OF ACTION
### (Outrage - Intentional Infliction of Emotional Distress)

73. The conduct of TSI in terminating Sansom's employment at a time when TSI knew that he was in the intensive care unit was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

74. TSI acted recklessly in terminating Sansom's employment when it was certain or substantially certain emotional distress would result from TSI's conduct.

75. The actions of TSI caused Sansom to suffer severe emotional distress.

76. The emotional distress suffered by Sansom was so severe that no reasonable person could be expected to endure it entitling him to damages in an amount to be determined by the jury.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Alva Sansom respectfully requests that this Honorable Court enter a judgment in his favor, granting him the following relief:

(a) Compensatory damages for back pay and front pay in an amount as set forth above under the ADEA, the ADA, the WVHRA, ERISA and the FMLA;

(b) Compensatory damages for humiliation, indignity, embarrassment and emotional distress under the ADA and the WVHRA;

(c) Liquidated damages under the ADEA and the FMLA;

(d) Punitive or exemplary damages on his claim under the ADA and the WVHRA;

(e) Reinstatement and/or front pay;

(e) Damages for emotional distress due to outrage;

(f) Reasonable attorney fees and costs; and

(g) Such other and further relief as this Honorable Court find just and equitable.

### Jury Trial Demand

Plaintiff demands a jury trial on all issues triable to a jury.

                                              PLAINTIFF,
                                              BY COUNSEL.

/s/ *Allan N. Karlin*
ALLAN N. KARLIN, WV BAR # 1953
JANE E. PEAK, WV BAR # 7213
ALLAN N. KARLIN & ASSOCIATES
174 CHANCERY ROW
MORGANTOWN, WV 26505
304-296-8266